IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TEDDY BEASLEY,** | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 1:20-00092-N |
| | ) |
| **O'REILLY AUTO PARTS,** | ) |
|     **Defendant**. | ) |

## **MEMORANDUM OPINION**

By order dated and entered August 12, 2021 (Doc. 71), the Court denied Plaintiff Teddy Beasley's motion for partial summary judgment (Doc. 50), granted the motion for summary judgment (Doc. 71) of Defendant O'Reilly Auto Parts ("O'Reilly") as to all of Beasley's claims, denied as moot Beasley's motion to strike the declaration of Heather Bolanos (Doc. 59), and dismissed Beasley's causes and claims in this civil action with prejudice. The Court now issues this memorandum opinion setting out the Court's reasoning behind those rulings.

The Court incorporates herein the reasoning set out in the Court's order dated and entered July 29, 2021 (Doc. 64), and provides the following additional reasoning addressing the parties' supplemental briefing filed in response to the July 29 order (Docs. 68, 69):

### **I. Eleventh Circuit Precedent Requires a Showing of an Adverse Employment Action for ADA Failure-to-Accommodate Claims**

The undersigned acknowledges that Beasley has cited ample non-binding authority from other circuits holding otherwise, but maintains that he is required to present evidence of an "adverse employment action" to sustain his failure-to-

accommodate claim brought under Title I of the Americans with Disabilities Act ("ADA"), under the binding reasoning of *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247 (11th Cir. 2007), including footnote 17.[1] The undersigned disagrees with Beasley's arguments that *Holly*'s footnote 17 is non-binding dicta, or that it is inconsistent with Eleventh Circuit precedent predating the *Holly* decision.[2]

The panel in *Holly*, which squarely addressed an ADA failure-to-accommodate claim (along with a similar claim under Florida law that is analyzed using the same framework), began its analysis by reiterating the longstanding "controlling law in this Circuit[ that] '[t]he burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims.'" 492 F.3d at 1255 (quoting *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (per curiam)). *Accord Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999); *Todd v. Fayette Cty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021). The panel further reiterated circuit precedent that, under this burden-shifting analysis, "[t]o establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Holly*, 492 F.3d at 1255-56 (citing *Earl*, 207 F.3d at 1365)).

---

[1] This Court is bound to follow Eleventh Circuit precedent unless and until it is overruled or undermined to the point of abrogation by the United States Supreme Court, or by the Eleventh Circuit sitting *en banc*. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

[2] Beasley does not dispute the undersigned's conclusion in the July 29 order that he is required to demonstrate an adverse employment action to sustain an ADA disparate impact claim.

The second and third prongs were at issue in *Holly*. *Id.* at 1256.

In addressing the "subjected to unlawful discrimination" prong, the *Holly* panel rejected the district court's determination that the plaintiff was required to identify a comparator employee, or otherwise present evidence showing that he was treated differently from non-disabled employees, to satisfy that prong—i.e., that he "was required to prove disparate treatment…" *Id.* at 1261-62. Noting that such a requirement "reflects … a misunderstanding of the fundamental nature of a reasonable accommodation claim under the ADA[,]" the panel explained that "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Id.* at 1262. This holding, the panel explained, modified the traditional Title VII burden-shifting analysis by obviating any additional burden on a plaintiff to show that he was treated differently than a non-disabled employee, as well as any subsequent burden on the employer to show a legitimate non-discriminatory reason for the unequal treatment, or on the plaintiff to show pretext. *Id.* In other words, the panel explained, an employer "is not insulated from liability under the ADA by treating its non-disabled employees exactly the same as its disabled employees." *Id.*

However, in footnote 17, the *Holly* panel, aptly noting that this holding could be interpreted as rendering the "subjected to unlawful discrimination because of his disability" prong of an ADA *prima facie* case "void of content" in failure-to-accommodate cases, explained why it did not. *Id.* at 1263 n.17. Longstanding

Eleventh Circuit precedent held that a plaintiff generally "must show that he has suffered an adverse employment action because of his disability (i.e., that he has suffered employment discrimination)" in order to establish the third prong of a *prima facie* case of ADA employment discrimination, *Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1441, 1445 (11th Cir. 1998); *see also McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) ("[T]he ADA protects against more than termination. It prohibits discrimination 'in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.' 42 U.S.C.A. § 12112(a) (West 1995); *see also id.* § 12203 (anti-retaliation provision) (prohibiting employers to 'discriminate'). In other words, the ADA prohibits a broad variety of adverse employment actions, whenever those actions are taken for a prohibited reason."), and the panel explained that its holding did not alter that burden in failure-to-accommodate cases, stating: "In addition to requiring the plaintiff to show that he was 'unlawfully discriminated against'—that is, that his employer failed to reasonably accommodate his disability, leading to an adverse employment decision—the plaintiff must show that this discrimination occurred 'because of his disability'—that is, that the adverse employment decision was caused by his disability." *Holly*, 492 F.3d at 1263 n.17. Thus, far from being unnecessary to the case, *Holly*'s footnote 17 was necessary to further contextualize how that opinion's analysis of failure-to-accommodate claims fit in with the Eleventh Circuit's traditional three-prong *prima facie* case for ADA discrimination.

The undersigned acknowledges that there seems to be no Eleventh Circuit case, either published or unpublished, that has expressly cited *Holly*'s footnote 17 for the proposition that an ADA plaintiff must still show an adverse employment action for a failure-to-accommodate claim—indeed, there appears to be no published Eleventh Circuit decision to have considered footnote 17 at all.[3] However, *Holly* is in the books as a published panel decision, and simply because precedent has been overlooked in the past does not give a court license to disregard it once it has been squarely presented. *Cf. Cohen v. Off. Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000) ("where two prior panel decisions conflict we are bound to follow the oldest one").

Beasley correctly points out that Eleventh Circuit decisions both pre-dating and post-dating *Holly* have omitted specific mention of an adverse employment action as an element of an ADA failure-to-accommodate claim. However, the undersigned does not read those cases' silence on the issue as irreconcilably in tension with *Holly*, as none of the cases Beasley cites purported to provide an exhaustive list of the elements of a failure-to-accommodate claim, and all were decided based on consideration of other elements.[4]

---

[3] The only Eleventh Circuit decision to expressly cite *Holly*'s footnote 17 that the undersigned could locate is the unpublished decision *Collier v. Harland Clarke Corp.*, 820 F. App'x 874 (11th Cir. 2020) (per curiam), which cited it for the proposition that "[t]he third prong [of a prima facie employment-discrimination case under the ADA], addressing causation, requires the plaintiff to show that the discriminatory motivation was the but-for cause of the adverse employment action." 820 F. App'x at 878–79.

[4] The undersigned does not read *Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017), as clearly "reaffirming" that an adverse employment action is not required to show a failure-to-accommodate claim, contrary to Beasley's contention.

Moreover, contrary to Beasley's contention, requiring a showing of an adverse employment action for a failure-to-accommodate claim is consistent with the plain language of the ADA. The ADA's general antidiscrimination provision states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

---

(*See* Doc. 69, PageID.1338-1339). At most, *Boyle*'s wording is ambiguous on the issue. Regardless, *Boyle* post-dates *Holly* and made no mention of that case.

    Beasley correctly points out that the Eleventh Circuit's civil pattern jury instruction for ADA failure-to-accommodate claims does not mention an adverse employment action as an element of such a claims. Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 4.12 (2020). However, that does not alter the undersigned's conclusion about the binding effect of *Holly*'s footnote 17. "Although generally considered 'a valuable resource, reflecting the collective research of a panel of distinguished judges,' [the pattern jury instructions] are not binding; Eleventh Circuit case law takes precedence." *United States v. Dohan*, 508 F.3d 989, 994 (11th Cir. 2007) (per curiam). *See also United States v. Focia*, 869 F.3d 1269, 1283 (11th Cir. 2017) (pattern jury instructions "are not infallible, and they do not represent binding law"); Judicial Council of the Eleventh Circuit Resolution of May 29, 2013 (authorizing distribution of the civil pattern jury instructions to the judges of the circuit "for their aid and assistance," but noting "that this resolution shall not be construed as an adjudicative approval of the content of such instructions which must await case-by-case review by the Court"). The Eleventh Circuit has found its pattern instructions to be incorrect in the past. *See Dohan*, 508 F.3d at 994 ("The district court correctly instructed the jury, notwithstanding the pattern jury instructions, that the appropriate mental state for convicting under [18 U.S.C.] § 1956(h) was merely 'knowing and voluntarily,' as we have held in cases post-dating the adoption of the pattern instruction … To that extent, Pattern Jury Instruction 70.5 places a higher burden on the government for proving an offense under 18 U.S.C. § 1956(h) than does the statute, and should not be used."); *Focia*, 869 F.3d at 1283 (finding that a pattern criminal instruction erroneously omitted a phrase from the relevant statute). Here, the "annotations and comments" to Civil Pattern Instruction 4.12 do not mention *Holly* or otherwise explain what Eleventh Circuit case law was used to justify its statement of the elements of an ADA failure-to-accommodate claim. Accordingly, the undersigned concludes that, to the extent Civil Pattern Instruction 4.12 is inconsistent with *Holly*, *Holly* controls.

conditions, and privileges of employment." 42 U.S.C. § 12112(a). Section 12112 goes on to provide various examples of what it means to "discriminate against a qualified individual on the basis of disability" for purposes of § 12112(a), including the failure to provide reasonable accommodations. *Id.* § 12112(b)(5)(A). However, as § 12112(a) makes clear, "discriminat[ion] against a qualified individual on the basis of disability," regardless of what form it takes, must be "*in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.*" *Id.* § 12112(a) (emphasis added). "By its plain terms, § 12112(b) speaks directly to satisfaction of the discrimination clause but is silent as to the twenty-five words Congress included in the in-regard-to clause. [Therefore], the in-regard-to clause must be satisfied by something more than an employer's failure to accommodate." *Exby-Stolley v. Bd. of Cty. Commissioners*, 979 F.3d 784, 823 (10th Cir. 2020) (en banc) (McHugh, J., dissenting), *cert. denied sub nom. Bd. of Cty. Commissioners v. Exby-Stolley*, No. 20-1357, 2021 WL 2637869 (U.S. June 28, 2021).

### II. Beasley Has Not Shown That He Suffered an Adverse Employment Action Because of His Disability

Beasley also argues that, regardless of whether circuit precedent requires him to do so, he can present evidence that he suffered an adverse employment action because of his disability to support his failure-to-accommodate claim, as well as his disparate impact claim. The undersigned is not convinced.

To constitute an "adverse employment action" to support a discrimination claim, "the employer's action must impact the 'terms, conditions, or privileges' of the

plaintiff's job in a real and demonstrable way. Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment … [A]n employee must show a *serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (citing *Doe*, 145 F.3d at 1453), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). *Accord Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920-21 (11th Cir. 2018). An ADA plaintiff must show that "the prohibited motivation makes the difference in the employer's decision, *i.e.*, [that] it is a 'but-for' cause." *McNely*, 99 F.3d at 1076.

Beasley argues that O'Reilly's failure to provide him an interpreter at, or at least thorough summaries of, company safety meetings subjected him to the adverse employment action of an unsafe work environment. By making him "unable to participate in or understand vital safety issues," Beasley claims, he was made to "fe[el] unsafe and unable to adequately perform his job as a result." (Doc. 69, PageID.1343). Beasley also argues that providing him with more information about what was discussed at safety meetings could have led to higher ratings in the "Safety-Housekeeping" factor on his performance evaluations. Beasley similarly argues that O'Reilly's failure to provide him an interpreter at, or at least thorough summaries of,

job trainings, staff meetings, and performance reviews caused him to miss out on "team building and disseminati[on of] key information for the job[,]" and affected his "ability to understand and perform the job[,]" which resulted in lower scores in the "Quality of Work," "Productivity," "Teamwork," and "Job Knowledge" factors, among others, on his performance evaluations. (*Id.*, PageID.1343-1344). Beasley further argues that O'Reilly's provision of an interpreter at the company picnic could have improved his "Teamwork" performance review score.

However, Beasley has not pointed to any specific safety, training, or other job-related issue that his alleged inability to understand caused a "real and demonstrable" negative effect on his job performance. The mere possibility that his alleged inability to understand safety and training issues, or what was said at the company picnic, could have had some negative impact on his job performance is too speculative to constitute an adverse employment action, and his subjective belief that he was being deprived of vital information is insufficient to show one.

As was noted in the Court's July 29 order, Beasley's absenteeism and tardiness did appear to have a tangible adverse effect on his employment by lowering his scores in the "Attendance" factor of his performance evaluations. However, Beasley has failed to show that he was subject to this adverse action "because of his disability." As for any purportedly preserved disparate impact claim, Beasley has failed to point to any evidence indicating that he was treated any differently than non-disabled employees over his absenteeism or tardiness.

For his failure-to-accommodate claim, Beasley asserts that his extended

absence in July 2017 had actually been agreed to by O'Reilly ahead of time, and that if he had been provided an interpreter, he "and his supervisors would have been able to communicate more effectively their conflicting interpretations of his time-off approval and reasons for tardiness and absenteeism…" (*Id.*, PageID.1345). Beasley also asserts that if O'Reilly had provided him with an interpreter when counseling him about his absenteeism and tardiness, he might not have been penalized at all, and further instances could have been avoided. However, Beasley "bears the burden of showing not only that [O'Reilly] failed to reasonably accommodate his disability, but that, but for [O'Reilly]'s failure to accommodate his disability, he would not have [received lower performance evaluation scores]—in other words, [Beasley] must show that his disability caused him to be late[ or miss work], so that [O'Reilly]'s failure to give him any leeway in its punctuality policy, leading to his [lower evaluation scores], amounted to [lower scores] 'because of his disability.' " *Holly*, 492 F.3d at 1263 n.17. Beasley has pointed to no evidence that his deafness caused him to do so. Moreover, Beasley has failed to offer any specific way in which he could not adequately explain or discuss his absenteeism or tardiness using a combination of verbal communication and written communication through his cell phone; his speculation that having an interpreter available might have allowed him to avoid being penalized for his absences or tardiness is not substantial evidence sufficient to withstand summary judgment for O'Reilly. *See Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false

issue, the demolition of which is a primary goal of summary judgment.").[5]

Because Beasley did not show that he suffered an adverse employment action because of his disability, summary judgment was due to be granted in favor of O'Reilly on his ADA disparate impact and failure-to-accommodate claims.

### III. Alternatively, Beasley Has Not Shown that He Was Prevented from Performing Any Essential Job Function by O'Reilly's Purported Failure to Provide an Accommodation

Alternatively, the undersigned agrees with O'Reilly that it was due summary judgment on Beasley's failure-to-accommodate claim because Beasley has not shown that O'Reilly's failure to provide any accommodation prevented him from performing his essential job functions.[6] Binding Eleventh Circuit precedent holds that an "accommodation is 'reasonable' and necessary under the ADA *only* if it enables the employee to perform the essential functions of the job." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1259-60 (11th Cir. 2001) (emphasis added) (citing *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("An 'accommodation' is 'reasonable'—and, therefore, required under the ADA—only if it enables the employee to perform the essential functions of the job." (citing 29 C.F.R. §

---

[5] The undersigned also finds that these circumstances, even when considered as a whole, do not meet the high burden of showing that Beasley's resignation should be considered a constructive discharge. While Beasley was obviously frustrated by certain aspects of his employment, he has not "produce[d] substantial evidence" that "working conditions were so intolerable that reasonable persons in [his] position would have felt compelled to resign." *Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1302 (11th Cir. 2005).

[6] This issue was raised in O'Reilly's opening brief in support of its motion for summary judgment. (*See* Doc. 48, PageID.315-316).

1630.2(o)(2)(ii) (1995))), and *Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir. 1997) (per curiam) (same as *LaChance*)). *Accord Holly*, 492 F.3d at 1256 ("An accommodation is 'reasonable' and necessary under the ADA … only if it enables the employee to perform the essential functions of the job." (citing *Lucas*, 257 F.3d at 1259–60, *LaChance*, 146 F.3d at 835, and 29 C.F.R. § 1630.2(o)(1)(ii)). "[I]f an employee does not require an accommodation to perform her essential job functions, then the employer is under no obligation to make an accommodation, even if the employee requests an accommodation that is reasonable and could be easily provided." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1435 (Mem), 209 L. Ed. 2d 155 (2021).[7] "The plaintiff bears

---

[7] Equal Employment Opportunity Commission regulations define a "reasonable accommodation" as "(i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1). Based on § 1630.2(o)(1), Beasley argues that he does not need to show that a reasonable accommodation relates to an essential job function if he can instead show that the accommodation enabled him "enjoy equal benefits and privileges of employment as are enjoyed" by non-disabled employees. In support, he cites substantial non-binding authority—opinions from district courts, *see, e.g.*, *Washington v. Rivera*, 939 F.3d 1239, 1244 n.8 (11th Cir. 2019) ("[D]istrict court opinions are not binding precedent."), and from courts of appeals for other circuits—indicating that a plaintiff need not show that a reasonable accommodation relates to an essential job function if he can instead show the accommodation satisfies either of the other two provisions of 29 C.F.R. § 1630.2(o)(1). *See, e.g.*, *Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 453 (5th Cir. 2013) (noting that neither the text of the ADA statute nor 29 C.F.R. § 1630.2(o) limit "reasonable accommodation" to only one that facilities essential job functions); *Adams v. Crestwood Med. Ctr.*, 504 F. Supp. 3d 1263, 1303-05 (N.D. Ala.

2020) (collecting cases).

If this was an issue of first impression, Beasley's argument would be persuasive. Regulations adopted under the ADA by the EEOC "are entitled to substantial judicial deference." *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1215 & n.9 (11th Cir. 2010). With the word "or" separating its three subsections, § 1630.2(o)(1) is written in the disjunctive, indicating that an accommodation that satisfies any of those subsections is "reasonable." The Eleventh Circuit cases holding otherwise appear to have concluded that a "reasonable accommodation" must relate to an essential job function because the ADA defines the term "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires[,]" 42 U.S.C. § 12111(8). *See LaChance*, 146 F.3d at 835 ("A qualified individual with a disability must satisfy 'the requisite skill, experience, education and other job-related requirements of the employment position,' and 'with or without reasonable accommodation,' the individual must be able to perform the 'essential functions of the position.' The ADA requires employers to provide reasonable accommodations for known disabilities unless that accommodation would result in undue hardship for the employer. An 'accommodation' is 'reasonable'—and, therefore, required under the ADA—only if it enables the employee to perform the essential functions of the job." (footnotes omitted)); *Holly*, 492 F.3d at 1256 ("In order to make out the second prong of his prima facie case, Holly must prove that he is a 'qualified individual'—that is, someone with a disability who, 'with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.' 42 U.S.C. § 12111(8). Accordingly, an ADA plaintiff must show either that he can perform the essential functions of his job without accommodation, or, failing that, that he can perform the essential functions of his job with a reasonable accommodation. An accommodation is 'reasonable' and necessary under the ADA, in turn, only if it enables the employee to perform the essential functions of the job." (quotation and case citations omitted)). However, as § 12111(8) makes clear, even an individual who can perform all essential job functions "without reasonable accommodation" can still be a "qualified individual" under the ADA. If such a "qualified individual" can then sue for ADA discrimination over an employer's failure to "mak[e] reasonable accommodations [for] known physical or mental limitations[,]" 42 U.S.C. § 12112(b)(5)(A), that indicates the withheld "reasonable accommodation" need not relate to an essential job function in order to be required by the ADA. *See Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993) ("[E]mployers are not relieved of their duty to accommodate when employees are already able to perform the essential functions of the job. Qualified handicapped employees who can perform all job functions may require reasonable accommodation to allow them to (a) enjoy the privileges and benefits of employment equal to those enjoyed by non-handicapped employees or (b) pursue therapy or treatment for their handicaps. In other words, an employer is obligated not to interfere, either through action or inaction, with a handicapped employee's efforts to

---

pursue a normal life."); *Sanchez v. Vilsack*, 695 F.3d 1174, 1181 (10th Cir. 2012) (citing *Buckingham* with approval in holding that "EEOC interpretive regulations contemplate accommodations that are wholly unrelated to the essential functions of a job").

However, this Court is bound to follow Eleventh Circuit precedent unless and until it is overruled or undermined to the point of abrogation by the United States Supreme Court, or by the Eleventh Circuit sitting *en banc*. *Archer*, 531 F.3d at 1352. The Eleventh Circuit has clearly stated in multiple published decisions that "only" an accommodation that "enables the employee to perform the essential functions of the job" is required by the ADA, and the only Eleventh Circuit decision the undersigned could locate that has expressly considered the "equal benefits and privileges of employment" provision of § 1630.2(o)(1) determined it was subject to that circuit precedent. *See Novella v. Wal-Mart Stores, Inc.*, 226 F. App'x 901, 903 (11th Cir. 2007) (per curiam) (unpublished) ("Equal Employment Opportunity Commission (EEOC) regulations define the term 'reasonable accommodation' to include both modifications that enable an employee to 'perform the essential functions' of the job, and modifications that enable an employee to 'enjoy the equal benefits and privileges of employment" as other, non-disabled employees. 29 C.F.R. § 1630.2(o )(1)(ii), (iii) … We have not addressed whether the ability to understand charges and defend oneself at a termination meeting qualifies as one of the 'benefits and privileges' of employment. Nonetheless, we have held that '[a]n "accommodation" is "reasonable"— and, therefore, required under the ADA—only if it enables the employee to perform the essential functions of the job.' *LaChance*, 146 F.3d at 835 (emphasis added).[]In light of our earlier pronouncement in *LaChance*, we conclude that communication at a termination meeting, the purpose of which is to give the employee notice of his termination, is not an 'essential function' of an employee's job."). *But see Equal Emp. Opportunity Comm'n v. Kaiser Found. Health Plan of Georgia, Inc.*, No. 1:19-CV-05484-AT-WEJ, 2021 WL 2547068, at *19 (N.D. Ga. Apr. 19, 2021) (Walter Johnson, M.J.) (report and recommendation) ("LaChance did not cite 29 C.F.R. § 1630.2(o)(1)(iii), which defines "reasonable accommodation" as including modifications or adjustments that enable an employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities. Thus, while essential functions might be relevant to reasonable accommodations that make modifications or adjustments to the work environment, or to the manner or circumstances under which the position held is customarily performed, essential functions are not relevant to modifications or adjustments that enable an employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.").

the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." *Lucas*, 257 F.3d at 1255.

The plaintiff must also prove that he "made a specific request for a reasonable accommodation[,]" and that his "employer … failed to provide a reasonable accommodation, or engage in the requisite interactive process in order to identify a reasonable accommodation." *D'Onofrio*, 964 F.3d at 1021 (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (per curiam)). The interactive "process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). It is undisputed that, at an interactive process meeting occurring shortly before he started work, Beasley and O'Reilly agreed that Beasley would not require a sign language interpreter at all times but that he would be provided one whenever he felt one was needed. In the meantime, O'Reilly agreed to allow Beasley to retain his cell phone while working so that he could communicate with his supervisors via text and email.

"[E]ven if an employer has voluntarily provided accommodations to the employee historically, that employer is not obligated to continue providing them and can discontinue such when they exceed what is legally required under the ADA." *D'Onofrio*, 964 F.3d at 1022. Therefore, the mere fact that O'Reilly promised to provide Beasley an interpreter any time he requested one, or even without a request, does not render any subsequent failure to do so an ADA violation. The undersigned

disagrees with Beasley that his telling O'Reilly "an interpreter would be necessary from time to time" for future unspecified "important events and meetings" (Doc. 55, PageID.1160-1161) at the interactive process meeting constituted a "specific request for a reasonable accommodation" such that O'Reilly was required under the ADA to anticipate, on its own initiative, Beasley's need for an interpreter at all future events. *Cf. Gaston*, 167 F.3d at 1364 ("[T]he EEOC's interpretive guidelines, issued pursuant to its authority to issue regulations under the ADA, provide that '[i]n general ... it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.' 29 C.F.R. pt. 1630 App. § 1630.9.").

Beasley asserts that O'Reilly failed to provide him an interpreter at his request in the following instances: "once for his forklift training; once for his daily meeting; twice for his disciplinary action, and once for the company picnic." (Doc. 50, PageID.682 (record citations omitted)). For the daily meetings, Beasley alternatively claims that O'Reilly should have provided him detailed summaries of what was discussed.[8] However, while the provision of these accommodations might have

---

[8] O'Reilly derides Beasley's reliance on his "own self-serving contention testimony" as evidence that he verbally made these requests for accommodations, asserting that it is "uncorroborated by any co-workers, third-party witnesses, or by contemporaneous documentary evidence." (Doc. 53, PageID.908). Even accepting O'Reilly's characterizations, that alone does not give the Court license to disregard it or find it insubstantial for purposes of summary judgment. *Cf. Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) ("According to Experian, a plaintiff's 'self-serving affidavit,' standing alone, can't prove emotional damages sufficiently to survive summary judgment. But that argument runs headlong into our en banc decision in *United States v. Stein*, in which we held that '[a] non-conclusory affidavit which complies with Rule 56 can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated.' 881 F.3d 853, 858–59 (11th Cir. 2018) (en banc).").

improved Beasley's employment experience, Beasley has failed to point to evidence indicating that O'Reilly's failure to provide any of these accommodations actually prevented him from performing the "essential functions" of his job.

Beasley only argues that O'Reilly's failure to provide him an interpreter at the company picnic deprived him from enjoying equal benefits and privileges of employment as those enjoyed by non-disabled employees. Because he does not claim that the failure to provide him an interpreter at the picnic prevented him from performing an essential job function, no failure to accommodate has been shown in that instance. As for O'Reilly's other purported instances of failing to accommodate, the evidence of record shows that, other than Beasley's issues with absenteeism and tardiness, O'Reilly was satisfied with Beasley's job performance.

Beasley claims that the failure to provide him an interpreter at his forklift training resulted in a breakdown in communication and the training ultimately being suspended. However, Beasley has pointed to no evidence indicating that forklift operation constituted a significant component of Beasley's job, that the purportedly deficient forklift training impacted his ability to perform his job duties, or that O'Reilly ever held the purportedly deficient forklift training against Beasley. As for his absenteeism and tardiness, Beasley merely argues O'Reilly's failure to provide interpreters at disciplinary meetings prevented him from adequately explaining the reasons for his absences, and from receiving effective counseling to address these issues. However, he does not claim that his disability impaired his ability to show up for work on schedule, nor does he elaborate on how additional counseling could have

ameliorated those issues. As for his extended absence in July 2017, while Beasley's position is that he had received prior permission to take this leave, he fails to specify how he was prevented from adequately explaining this to O'Reilly management through a combination of verbal communication and written communication using his cell phone. The mere fact that Beasley feels he was unjustifiably disciplined does not mean that O'Reilly's purported failure to provide him an interpreter to explain himself was unreasonable compared to the other accommodations he was already receiving.

Beasley speculates that the failure to provide interpreters at daily meetings, or at least provide detailed summaries, caused him to miss important operational and safety information, but does not point to any concrete examples of such information, or any evidence indicating that his job performance suffered as a result. Indeed, Beasley admits that he "picked up his work *despite* Defendant's lack of proper training and communication" by observing other employees, indicating that providing interpreters at meetings was not required for him to perform his essential job functions. *See D'Onofrio*, 964 F.3d at 1022 (an employer is under no obligation to make an accommodation "if an employee does not *require* [one] to perform her essential job functions" (emphasis added)). That Beasley believes he could have performed his job better or more effectively if provided interpreters or given meeting summaries is insufficient to establish O'Reilly's liability under the ADA. Under Eleventh Circuit precedent, an employer's duty to provide reasonable accommodations under the ADA extends only to those that allow a disabled employee

to perform essential job functions. It does not require an employer to provide any accommodation the employee believes could improve job performance, or to otherwise empower a disabled employee to become the model for all other employees.[9]

**DONE** this the 10th day of September 2021.

/s/ *Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[9] Because the Court's decision regarding the cross-motions for summary judgment did not require consideration of the declaration of Heather Bolanos, Beasley's motion to strike that declaration was due to be found moot.